UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-21738-COOKE/DAMIAN

RAMON A. AYALA

    Plaintiff,

vs.

MIAMI CUBAN LINK JEWELRY, INC.,
*a Florida for profit corporation*, MARK HAIMOV,
*individually, and* ROZA HAIMOV, *individually*

    Defendants.
_____/

### ORDER ON THE PARTIES' JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE [ECF NO. 20]

THIS CAUSE is before the Court on Plaintiff, Ramon A. Ayala ("Plaintiff" or "Ayala"), and Defendants, Miami Cuban Link Jewelry, Inc., Mark Haimov, and Roza Haimov's (collectively, "Defendants"), Joint Motion for Approval of Settlement and Dismissal with Prejudice [ECF No. 20 ("Motion")]. This matter is before the undersigned pursuant to the parties' Consent to Proceed Before a Magistrate Judge, in which the parties jointly and voluntarily elected to have the undersigned conduct all further proceedings in this case. [ECF No. 25]. *See* 28 U.S.C. § 636(c)(1).

The undersigned has considered the Motion, the proposed Settlement Agreement [ECF No. 20-1], the pertinent portions of the record, and the relevant legal authorities. The Court also heard from the parties, who appeared, through counsel, before the Court on September 28, 2022, and is otherwise fully advised in the premises. For the reasons set forth below, the Motion is granted, the Settlement Agreement is approved.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

On June 7, 2022, Ayala filed a two-count Complaint against Defendants alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for unpaid overtime wages. *See* ECF No. 1 ("Complaint"). According to the allegations in the Complaint, Miami Cuban Link Jewelry ("Corporate Defendant" or "MCL") is a jewelry retailer, and Defendants Mark and Roza Haimov are its corporate officers. *Id.* at ¶¶ 8, 12. Defendants employed Ayala as a polisher from July 2020 through February 27, 2022. *Id.* at ¶ 19. Ayala alleges he was initially paid $10 per hour, but that his wages increased to $12 per hour, and then again to $13 per hour, throughout the course of his employment. *Id.* at ¶ 21. He also alleges that he worked between 50-60 hours per week but was not compensated "on the books" for any of his hours worked in excess of 45 hours per week. *Id.* Ayala further alleges that he was never paid at a rate of time and one-half the applicable regular rate for hours worked in excess of 40 hours per week. *Id.* at ¶¶ 22-23.

On July 7, 2022, Ayala filed his Statement of Claim. [ECF No. 12 ("Statement of Claim")]. In the Statement of Claim, Ayala alleges he worked for MCL for 26 weeks at the rate of $10 per hour, for which he is owed between $650 to $1,300 in overtime wages. *Id.* at 2. He further alleges that he worked for 27 weeks at the rate of $11.00 per hour, for which he is owed $1,485, and that he worked for 26 weeks at the rate of $12 per hour, for which he is owed $1,560. *Id.* at 3. Lastly, he alleges he worked for 8 weeks at the rate of $13 per hour, for which he is owed $520. *Id.* In total, Ayala seeks a minimum of $4,215 *Id.* Therefore, in the Statement of Claim, Ayala claims he is owed a minimum of $8,430, which is comprised of $4,215 in unliquidated damages and $4,215 in liquidated damages, plus attorneys' fees and costs. *Id.*

On August 12, 2022, the parties submitted the Motion now before the Court seeking approval of their proposed settlement agreement, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), and dismissal of the action with prejudice. Mot. at ¶ 4.

In the Motion, the parties indicate they reached a settlement in this matter to avoid the burden, expense, and uncertainty of continued litigation. Mot. at ¶ 3. Defendants deny any liability and deny that they owe Ayala additional compensation pursuant to the FLSA. *Id.* at ¶¶1-4.

## II. APPLICABLE LEGAL STANDARDS

Section 206 of the FLSA establishes the federally mandated minimum hourly wage, and Section 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. 29 U.S.C. §§ 206, 207. An employer who violates the FLSA is liable to its employee for any unpaid minimum and/or overtime wages, as well as an equal amount in liquidated damages. 29 U.S.C. § 216(b). The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived" between employers and employees. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Nevertheless, there are two ways in which claims arising under the FLSA can be settled or compromised by employees: (1) if the payment of unpaid minimum wage/overtime pay is supervised by the Secretary of Labor; or (2) in a private lawsuit brought by an employee against his or her employer, if the parties present the district court with a proposed settlement agreement and the district court enters a stipulated judgment after scrutinizing the settlement for fairness. *See* 29 U.S.C. 216(c); *Lynn's*, 679 F.2d at 1352–53.

The Eleventh Circuit has held that the compromise of FLSA claims is allowed under the following circumstances:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's*, 679 F.2d at 1354. Thus, an employee may compromise a claim if the district court determines that the compromise "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355.

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee (*i.e.*, "internal" factors), and whether the settlement frustrates the purpose of the FLSA (*i.e.*, "external" factors). Factors considered "internal" include: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241–44 (M.D. Fla. 2010). There is a "'strong presumption' in favor of finding a settlement fair." *Walker v. Kirkman Mgmt., LLC*, No. 20-1149, 2022 WL 1037369, at * 2 (M.D. Fla. Mar. 18, 2022) (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)). Additionally, the "FLSA requires judicial review of the

reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

### III. DISCUSSION

With the foregoing in mind, the Court turns to scrutinize the parties' proposed Settlement Agreement for fairness.

#### a. *The Settlement Amount*

Under the proposed Settlement Agreement [ECF No. 20-1 ("Agreement")], Defendants agree to pay Ayala the total sum of $5,000, less applicable payroll taxes and withholding. Agreement at ¶ 3. $2,500 shall be allocated as wage-based compensatory damages, and $2,500 shall be allocated as non-wage-based compensatory and liquidated damages. *Id*. As indicated above and in the Statement of Claim, Ayala initially sought $4,215 in damages for alleged unpaid overtime wages and $4,215 in liquidated damages such that the settlement amount of $5,000 fully satisfies Ayala's damages for alleged unpaid overtime wages and satisfies approximately fifty-nine percent (59%) of the total damages originally sought in the lawsuit including liquidated damages. Statement of Claim at 1.

Both parties are represented by counsel and agree the negotiated terms of the Agreement are fair and equitable considering the strengths and weaknesses of the parties' respective positions. Mot. at 9.

The Court has scrutinized the terms of the Agreement and considered the above referenced factors. Based on the parties' representations and their expressed concerns regarding the alleged FLSA claims, the Court finds the settlement amount represents a fair and reasonable resolution of a bona fide dispute between the parties under all the circumstances presented and that Ayala has not unfairly compromised his FLSA claims.

The Court also finds the Agreement promotes the policy of encouraging settlement of litigation of FLSA claims. *Lynn's*, 679 F.2d at 1354.

Having found the settlement amount is fair and reasonable, the Court addresses the specific terms of the Agreement.

### b. Attorneys' Fees

In an FLSA action, the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). As part of the Agreement, separate and apart from the amount paid to Ayala, Defendants will pay Ayala's counsel $4,500.00 in attorney's fees and costs. The Motion states that this amount was negotiated separately from the amount paid to Ayala for his FLSA claims, such that Ayala agreed the settlement amount was fair separate and apart from consideration of the fees and costs paid to his counsel. Mot. at 7.

The Court has reviewed counsel's billing records and finds the amount billed, including the number of hours expended (18.7) and the hourly rate ($310/hour), is reasonable based on the facts and circumstances of this case. *See* [ECF No. 20-2 (Plaintiff's Attorney's Time Records)]. Moreover, based on the parties' representation that Ayala's attorney's fee was agreed upon separately and without regard to the settlement amount paid to Ayala, and finding the Agreement is otherwise reasonable on its face, the Court finds Ayala's recovery was not adversely affected by the amount of fees paid to his attorney. Therefore, the Court may approve the Agreement without separately considering the reasonableness of the fee to be paid to Ayala's counsel. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Even so, the Court finds the fees to be paid to Ayala's counsel, including the number of hours expended (18.7) and the hourly rate ($310/hour), are reasonable under the circumstances presented. The Court may rely on its

own experience in determining reasonableness of fees and does so here. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court, either trial or appellate, is itself an expert on the question [of reasonable hourly rates and hours expended] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))).

Accordingly, the Court finds the fees to be paid to Ayala's counsel pursuant to the Agreement are reasonable and have not adversely affected the amounts paid to Ayala under the Agreement.

### c. General Mutual Release

The Agreement also provides for mutual general releases of all claims the parties may have against each other. Agreement at ¶ 5.

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and, therefore, such releases "confer an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351–52 (M.D. Fla. 2010) (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352; *see also Bradford v. Ancient City Grp. LLC*, No. 21-513, 2022 WL 549589, at *3 n.2 (M.D. Fla. Feb. 15, 2022) ("Some judges will not approve an agreement to settle a FLSA claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined."); *King v. Premier Fire Alarms & Integration Sys., Installation Div., Inc.*, No. 20-60064, 2021 WL 7540777, at *1 (S.D. Fla. Dec. 17, 2021) (denying without prejudice joint

motion to approve FLSA settlement where "the Agreement contains unbounded and pervasive release provisions" requiring the plaintiff to "release many known and unknown legal claims that have nothing apparent to do with the current FLSA dispute"). Nevertheless, "if a plaintiff is given compensation in addition to that to which he or she is entitled under the FLSA, then general releases can be permissible." *Herrera v. FS Invs. of America, Inc.*, No. 20-2465, 2021 WL 1602120, at *2 (M.D. Fla. Apr. 8, 2021).

The Court has reviewed the terms of the mutual general releases, and addressed the general releases with the parties, through counsel, during the Fairness Hearing. Counsel represented that there are no other pending claims between the parties and that the releases were a significant factor in the parties' negotiations and that the settlement amount is partly attributable to the inclusion of the releases. The Court also notes that the parties confirmed that the occasional reference to Ayala as "Madariaga" in this section of the Agreement is a scrivener's error in the general releases Agreement at ¶ 5 and that at all times they intended to refer to Ayala. Based on the foregoing, the Court finds that the general releases do not undermine the fairness of the Agreement.

### d. *No Further Employment Provision*

The Agreement also contains a "No Further Employment" provision in which Ayala "permanently, unequivocally, and unconditionally waives any and all right . . . to obtain or resume employment with Defendants." *Id*. at ¶ 9. The Motion does not address this provision nor whether additional consideration was provided to Ayala for it.

As the Middle District has specified, "an agreement not to employ a plaintiff in the future plainly injures the plaintiff, and when the parties' briefing does not address the issue of additional consideration, courts cannot determine whether the inclusion of such provision in a settlement agreement represents a fair and reasonable resolution of the

parties' FLSA dispute." *Duffey v. Surfside Coffee Co.*, No. 20-cv-501, 2022 WL 766904, at *4 (M.D. Fla. Jan. 1, 2022) (citation and internal quotation marks omitted). Such provisions, nonetheless, may be approved where supported by sufficient additional consideration. *Id.* Moreover, "[n]o reemployment clauses are different from general releases, in that the plaintiffs, as former employees of the defendants, know exactly what they are relinquishing when they agree not to seek future employment with the defendants." *Holmes v. Swissport Fueling, Inc.*, No. 16-cv-669, 2019 WL 1370542, at *6 (M.D. Fla. Mar. 11, 2019) (citation omitted); *see also Cruz v. Winter Garden Realty, LLC*, No. 12-cv-1098, 2013 WL 4774617, at *3 (M.D. Fla. Sept. 4, 2013) ("Likewise, where a plaintiff indicates that she does not desire re-employment, the inclusion of a waiver of future employment does not render the settlement unfair.").

Here, as with the general release, the Agreement does not explicitly identify separate consideration for Ayala's waiver of future employment with Defendants. However, during the Fairness Hearing, the Court addressed this provision with counsel, both of whom agreed the provision enabled the parties to reach swifter resolution. Moreover, Ayala's counsel asserted that Ayala fully understands the provision and its implications and has no interest in seeking future employment with Defendants. Accordingly, the Court finds the inclusion of a waiver of future employment provision, despite the lack of additional consideration, does not undermine the fairness of the Agreement under the circumstances presented.

### e. *Confidentiality Provision*

The Agreement contains a confidentiality provision in which Ayala agrees not to "disclose or disseminate, directly or indirectly, any information concerning any such terms to any third person(s)[.]" Agreement at ¶ 11. The confidentiality provisions further states that "[n]otwithstanding the above, the parties understand that the Court may require the

filing of the Agreement for approval. If this Agreement is filed with the Court for approval, Plaintiff also agrees to not discuss, reveal or disclose that this Agreement is a matter of public record." *Id*.

Confidentiality provisions in FLSA settlement agreements are often rejected by district courts because courts consider them to "thwart Congress's intent to ensure widespread compliance with the FLSA." *Herrera*, 2021 WL 1602120, at *2 (citing cases). Moreover, "[j]udicial records are presumed to be public documents because '[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.'" *Smith v. Target Corp.*, No. 21-80307-CIV, 2021 WL 5366876, at *1 (S.D. Fla. Nov. 18, 2021) (quoting *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)). Therefore, a confidentiality provision in an FLSA settlement agreement "both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA right." *Mingo v. Ironclad Projects, LLC*, No. 19-CIV-62202, 2021 WL 8894997 at *4 (S.D. Fla. Mar. 1, 2021) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)).

At the Fairness Hearing, the Court heard from counsel regarding the confidentiality of the Settlement Agreement. Although no separate consideration was given to Ayala for this provision, the parties agree that the confidentiality provision is fair and reasonable, and the parties agree that, despite the provision, the terms of their Agreement may remain available in the public record. Further, Ayala's counsel confirmed that Ayala fully understands the confidentiality requirements. Accordingly, under the circumstances presented here, the Court finds that the confidentiality provision does not undermine the fairness of the Agreement.

### *f. Non-Disparagement Provision*

The Agreement contains a non-disparagement provision where Ayala agrees that he will not "provide information, issue statements, or take any action, directly or indirectly, that would cause Defendants embarrassment or humiliation or otherwise cause or contribute to Defendants being held in disrepute[.]" Agreement at ¶ 12. The provision also provides that Defendants shall provide Ayala's prospective employers with "a neutral job verification identifying his last position held, dates of employment, and, if authorized, compensation details." *Id*.

Courts that have analyzed the issue of non-disparagement clauses in FLSA settlement agreements have also generally rejected them. *Dees v. Hydrady, Inc.*, No. 8:09–cv–1405–T–23TBM, 706 F. Supp. 2d 1227, 1242–43 (M.D. Fla. 2010); *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260 (M.D. Ala. 2003); *Hanson v. Wells Fargo Bank, N.A.*, No. 08–80182–Civ, 2009 WL 1490582 (S. D. Fla. May 26, 2009). However, a number of cases have approved FLSA settlements in which the employee received additional consideration in exchange for non-cash concessions that went beyond the release of the FLSA claims. *DeGraff v. SMA Behavioral Health Serv., Inc.*, 945 F. Supp. 2d 1324, 1329–30 (M.D. Fla. 2013); *Caamal v. Shelter Mortgage Co., LLC*, No. 6:13–cv–706–Orl–36KRS, 2013 WL 5421955, *4 (M.D. Fla. Sept. 26, 2013).

During the Fairness Hearing, the Court addressed this provision with counsel, both of whom agreed the provision enabled the parties to reach swifter resolution. And Ayala's counsel asserted that he fully understands the provision and its implications. Accordingly, the Court finds that the inclusion of the non-disparagement provision does not undermine the fairness of the Agreement under the circumstances presented.

### g. *Retention of Jurisdiction*

Finally, the parties request the Court reserve jurisdiction for 45 days to enforce the terms of the Agreement. "To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough." *Anago Franchising, Inc. v. Shaz*, LLC, 677 F.3d 1272, 1279 (11th Cir. 2012*).* During the hearing, the parties clarified that the request for the Court to retain jurisdiction is based on the deadline for payment of the settlement amount. Noting that the parties filed the Agreement in the Court's docket, the Court finds the request to reserve jurisdiction to enforce the terms of the Agreement is reasonable.

## IV. FINDINGS

The Court has considered the factors outlined in *Lynn's Food Stores*; the factual positions of the parties; the existence (or lack thereof) of documents supporting or corroborating the parties' positions; the strengths and weaknesses in the parties' respective positions; and the parties' desires to resolve their disputes without protracted litigation.

As set forth above, the Court finds that the settlement represents a genuine compromise of a bona fide dispute. Defendants, who deny liability, have agreed to pay Ayala more than they believe Ayala is due under the law. The parties have agreed to settle because of reasonable strategic and financial considerations.

The Court also finds that the settlement occurred in an adversarial context and that there are genuine coverage and computation issues in dispute. The Court further finds that the settlement reached by the parties represents a reasonable compromise by both sides and is fair and reasonable and that the amount claimed as payment for Ayala's counsel's fees and costs is also reasonable.

## V. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the parties' Joint Motion for Approval of Settlement of FLSA Claims and Dismissal with Prejudice [ECF No. 20] is **GRANTED** and the Settlement Agreement is **APPROVED** as fair and reasonable. It is further

**ORDERED AND ADJUDGED** that the Clerk shall **CLOSE** this case and all pending motions, if any, are **DENIED AS MOOT.** It is further

**ORDERED AND ADJUDGED** that the Court retains jurisdiction for 45 days to enforce the terms of the Settlement Agreement.

**DONE AND ORDERED** in Chambers at Miami, Florida this 30th day of September 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE


cc: Counsel of Record